**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS**, 1156 15th Street NW, Suite 1250 Washington, D.C. 20005 | |
| Plaintiff, | |
| v. | Civil Action No. _____ |
| **FEDERAL BUREAU OF INVESTIGATION,** 935 Pennsylvania Avenue, NW Washington, D.C. 20535 | |
| and | |
| **UNITED STATES DEPARTMENT OF JUSTICE** 950 Pennsylvania Avenue, N.W. Washington, D.C. 20530 | |
| Defendants. | |

## COMPLAINT

The Reporters Committee for Freedom of the Press (the "Reporters Committee" or "Plaintiff"), by and through its undersigned counsel, alleges as follows:

1.      This is an action under the Freedom of Information Act ("FOIA" or the "Act"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief by the Reporters Committee against the Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") (collectively, "Defendants").

2.      By this action, the Reporters Committee seeks to compel Defendants to comply with their obligations under FOIA to release requested records concerning the FBI's practice of

impersonating members of the media—specifically, documentary filmmakers. Plaintiff is statutorily entitled to disclosure of these records, which it seeks so that it may inform the public about the nature and extent of such impersonation. Defendants have improperly withheld the records requested by Plaintiff in violation of FOIA and in opposition to the public's strong interest in obtaining information regarding a law enforcement practice that undermines the credibility and independence of documentary filmmakers and other journalists.

## JURISDICTION AND VENUE

3.　　　This Court has subject matter jurisdiction over this action and personal jurisdiction over Defendants pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

4.　　　Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

5.　　　Plaintiff Reporters Committee is an unincorporated nonprofit association of reporters and editors dedicated to preserving the First Amendment's guarantee of a free press and vindicating the rights of the news media and the public to access government records. The Reporters Committee is located at 1156 15th Street NW, Suite 1250, Washington, D.C. 20005.

6.　　　Defendant DOJ is an agency of the federal government within the meaning of 5 U.S.C. § 551, 5 U.S.C. § 552(f), and 5 U.S.C. § 702 that has possession, custody, and/or control of the records that Plaintiff seeks. DOJ's headquarters are located at 950 Pennsylvania Avenue NW, Washington, D.C. 20530.

7.　　　Defendant FBI is an agency of the federal government within the meaning of 5 U.S.C. § 551, 5 U.S.C. § 552(f), and 5 U.S.C. § 702, and is a component of Defendant DOJ, that has possession, custody, and/or control of the records that Plaintiff seeks. FBI's headquarters are located at 935 Pennsylvania Avenue NW, Washington, D.C. 20535.

## FACTUAL ALLEGATIONS

### Background

8.      In 2014, an armed confrontation erupted between supporters of cattle rancher Cliven D. Bundy ("Bundy") and law enforcement after the United States Bureau of Land Management sought to enforce court orders requiring Bundy to pay more than $1 million in withheld grazing fees for his use of federally-owned land adjacent to his ranch in southeastern Nevada.  Bundy was arrested in February 2015 on charges related to the 2014 standoff and is currently awaiting trial.  Gregory Burleson ("Burleson"), one of the armed supporters of Bundy who participated in the 2014 standoff, was tried and convicted in connection with this role; in July 2017, Burleson was sentenced to more than 68 years in federal prison.

9.      In March 2017, during Burleson's trial, an FBI agent testified that the FBI had impersonated documentary filmmakers during its 2014 investigation of Bundy.  Testifying in a federal district court in Nevada, FBI Special Agent Charles Johnson confirmed that FBI agents pretended to be documentary filmmakers to lure suspects, including Burleson and Bundy, into speaking with them.  *See* Jenny Wilson, *Bundy defendants interviewed in undercover FBI operation*, Las Vegas Review-Journal, Mar. 22, 2017, https://perma.cc/WZE8-NK4P; *see also* Andrew Blake, *FBI posed as documentary filmmakers to conduct interviews with Bundy Ranch supporters*, The Wash. Times, Mar. 24, 2017, https://perma.cc/3TK6-8HYY.

10.     Agent Johnson's testimony matched court records showing that federal agents posed as documentary filmmakers in order to elicit recorded statements from Bundy, Burleson, and others.  *See United States v. Burleson*, No. 2:16-CR-00046 (PAL) (GMN), Order Re: Mot. To Suppress 7-12, ECF No. 1277 (D. Nev. Jan. 11, 2017) ("The court has carefully reviewed the entirety of the October 2014 video recorded statement Burleson gave to undercover officers

posing as a documentary film crew"); *United States v. Bundy*, No. 2:16-CR-00046 (PAL)

(GMN), Gov's Opp. To Mot. In Limine 2, ECF No. 1591 (D. Nev. Feb. 16, 2017) (stating that

Bundy "spoke with undercover agents . . . in a hotel room under circumstances designed to make

Bundy believe that he was participating in [a] documentary by recounting his experiences

surrounding the [case]").

11.     According to court filings, FBI agents also used "professional credentials,

websites and business cards" to lend their fake documentary film company—Longbow

Productions—the appearance of authenticity.  *United States v. Bundy*, No. 2:16-CR-00046 (PAL)

(GMN), Motion In Limine 3-4, ECF No. 1488 (D. Nev. Feb. 2, 2017).

12.     Public disclosure of the FBI's impersonation of documentary filmmakers in

connection with the Bundy matter comes in the wake of recent changes made to FBI policies

regarding the impersonation of journalists more generally.  In September 2016, a report written

by the Office of the Inspector General for the Department of Justice ("OIG") revealed that the

FBI had issued new interim guidelines, referred to as Policy Notice ("PN") 0907N, on June 8,

2016 concerning FBI impersonation of members of the news media or documentary film crews.

Dep't of Justice, Office of the Inspector General, *A Review of the FBI's Impersonation of a*

*Journalist in a Criminal Investigation*, 23 (Sept. 2016), https://perma.cc/7ZYM-C7YS

(hereinafter, the "OIG Report").

13.     The OIG Report addressed a prior incident of FBI impersonation of a journalist;

in 2014 it was widely reported that the FBI had seven years earlier impersonated an Associated

Press ("AP") editor in connection with a bomb threat investigation.  *Id.* at *i*.  In that case, an FBI

agent, masquerading as an AP journalist, sent a juvenile criminal suspect an email containing a

link to a fabricated AP news story in order to deliver electronic surveillance malware to the suspect's computer.  *Id.*

14.     The revelation resulted in strong criticism from members of the public and the media.  On or about October 30, 2014, AP's General Counsel Karen Kaiser hand delivered to the Department of Justice a letter addressed to then-Attorney General Eric Holder, expressing concern over the FBI's actions and asking for additional information regarding how often, and under what circumstances, the FBI poses as a member of the press.  *See* Gene Johnson, *AP asks for accounting of fake FBI news stories*, The Associated Press, Oct. 30, 2014, https://perma.cc/FPY7-U8F3.

15.     According to the OIG Report, the FBI's new interim guidelines instruct agents on new procedures they must follow before posing as members of the news media or documentary filmmakers in connection with an investigation.  OIG Report at *i*.  The OIG Report states that the new policy instituted "important improvement[s]" to past practices.  *Id.*  For example, the OIG Report states that under PN 0907N FBI agents are required to obtain top-level approval before impersonating journalists or documentary filmmakers.  *Id.* at *ii* (stating "an application must first be approved by the head of the FBI field office submitting the application to [FBI Headquarters ("FBIHQ")], reviewed by the Undercover Review Committee at FBIHQ, and approved by the Deputy Director, after consultation with the Deputy Attorney General").

16.     The OIG Report suggests that the FBI may have had in the past, and may continue to have, different policies and/or practices concerning the impersonation of documentary filmmakers than it does for the impersonation of other journalists and members of the media. The title of PN 0907N appears to distinguish between impersonating a "documentary film crew" and a "member of the news media."  OIG Report at 7 n. 9 (stating the new interim policy—

entitled "Posing as a Member of the News Media or a Documentary Film Crew"—differentiates between a "member of the news media," which it defines as a person "who gathers, reports, or publishes news through the news media" and "documentary filmmakers," for which it provides no definition).

17.     Moreover, the OIG Report states in a footnote that it addresses the FBI's policy "*only* as it relates to employees posing as members of the news media" and excludes discussion of any cases before the publishing of the OIG Report that may have involved impersonation of documentary filmmakers.  *Id.* at 7 n. 10 (emphasis added).  The language of the OIG Report and the FBI's new interim guidelines—along with the recent disclosure of the FBI's impersonation of a documentary film crew in connection with the Bundy/Burleson matter—suggest that FBI agents may have posed as documentary filmmakers in connection with investigations more often than the public is aware.

### Plaintiff's FOIA Request

18.     On April 12, 2017, Adam A. Marshall, on behalf of the Reporters Committee, submitted a FOIA request to the FBI's central FOIA office via facsimile (the "Request").  A true and correct copy of the Request is attached to this Complaint as Exhibit A, and is incorporated by reference herein.

19.     The Request sought certain categories of records related to the FBI's impersonation of documentary filmmakers and/or documentary film crews.  Specifically, the Request sought eight distinct categories of records:

"1)     All records that mention 'Longbow' or 'Longbow Productions' since January 1, 2010, including but not limited to email communications, case files, training materials, and contracts;

2)      All records, including but not limited to email communications, concerning or referencing the impersonation of a documentary filmmaker and/or a documentary

film crew by the FBI in connection with any criminal investigation related to *United States v. Burleson*, No. 216-CR-00046 (PAL) (GMN) (D. Nev.);

3) The October 2014 video recording of Mr. Burleson made by FBI agents posing as a documentary film crew;

4) All records, including but not limited to email communications, concerning or referencing the impersonation of a documentary filmmaker and/or a documentary film crew by the FBI in connection with any criminal investigation related to *United States v. Bundy*, No. 2:16-CR-00046 (PAL) (GMN) (D. Nev.);

5) The 'release form' referenced on Page 2 of the Government's Motion to Strike in *United States v. Bundy*, No. 2:16-CR-00046 (PAL) (GMN), ECF. No. 926 (D. Nev. Nov. 2, 2016);

6) All records, including but not limited to email communications, concerning or referencing any other instances of impersonation of a documentary filmmaker and/or a documentary film crew by the FBI in connection with any criminal investigation since January 1, 2010;

7) Records of any 'professional credentials, websites and business cards' used by FBI agents in connection with the impersonation of a documentary filmmaker and/or a documentary film crew since January 1, 2010; and

8) All records of the FBI's policies and practices concerning the impersonation of documentary filmmakers and/or documentary film crews since January 1, 2010, including records of any changes to those policies and practices."

Exhibit A.

20. In order to assist the FBI in conducting a search for responsive records, the Request included additional background information about the records the Reporters Committee sought, including publicly available information about the FBI's impersonation of a documentary film crew in connection with the Bundy/Burleson matter, the FBI's impersonation of an AP journalist in 2007, as well as then-FBI Director James Comey's public acknowledgment of the FBI's practice of posing as members of the media in a letter to the editor published in *The New York Times* in 2014.

21.     The Request included a request for a fee benefit as a representative of the news media under 5 U.S.C. § 552(a)(4)(A), as well as a request for a fee waiver.  The Request states, *inter alia*, that information responsive to the request was being sought for "dissemination to the general public through multiple avenues," including the Reporters Committee's website, email newsletters, and its quarterly magazine.  In addition, in support of the Reporters Committee's request for a fee waiver, the Request describes the public's "ongoing interest in … law enforcement investigative techniques involving journalists" and states that "[i]nformation gathered through this request will help the public understand both past practices of federal law enforcement posing as documentary filmmakers and how those practices have changed over time."

22.     The Request complied with all applicable DOJ and FBI regulations regarding the submission of FOIA requests.

### Defendants' Treatment of Plaintiff's FOIA Request

23.     By six letters—five dated April 27, 2017 and one dated May 18, 2017—David M. Hardy responded to the Request on behalf of the FBI and informed the Reporters Committee that it had split the Request, which consisted of eight separate components, into four groups, as follows:

**Request No. 1372347-000**, concerning "October 2014 Video Recording and Release Form to include FBI Impersonation of Documentary Filmmaker and/or Film Crew (January 1, 2010 to Present (United States v. Burleson))";

**Request No. NFP-71761**, concerning "All Records Referencing Any Other Instances of FBI Impersonation of Documentary Filmmaker and/or Film Crew (January 1, 2010 to Present)";

**Request No. 1372342-000**, concerning "Longbow Productions including FBI Impersonation of Documentary Filmmaker and/or Film Crew (January 1, 2010 to Present (United States v. Bundy))"; and

**Request No. 1372351-000**, concerning "FBI's Policies and Practices concerning the Impersonation of Documentary Filmmaker and/or Film Crew (January 1, 2010 to Present)."

True and correct copies of the six letters are attached to this Complaint as Exhibit B.

24.      As to the first group, identified by the FBI as Request No. 1372347-000, by letter dated April 27, 2017, the FBI issued a so-called *Glomar* response.  Invoking FOIA exemption (b)(7)(E), the letter states, *inter alia*, that "the FBI neither confirms nor denies the existence of any records which would tend to indicate or reveal whether an individual or organization is of investigatory interest to the FBI" because "[a]cknowledging the FBI's interest invites the risk of circumvention of federal law enforcement efforts."

25.      As to the second group, identified by the FBI as Request No. NFP-71761, by letter dated April 27, 2017, the FBI stated that the Request "does not contain enough descriptive information to permit a search of our records" and requested "more specific information."

26.      As to the third group, identified by the FBI as Request No. 1372342-000, by letter dated May 18, 2017, the FBI stated that the material requested is "located in an investigative file which is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A)."

27.      As to the fourth group, identified by the FBI as Request No. 1372351-000, the FBI did not make a determination.  By letter dated April 27, 2017, the FBI stated that "unusual circumstances" applied to the processing of that portion of the Request which would "delay [the

FBI's] ability to make a determination . . . within 20 days (excluding weekends and legal public holidays)."

28.     On June 5, 2017, the Reporters Committee submitted, via facsimile, a timely administrative appeal challenging the FBI's response to the Request (the "Appeal").  A true and correct copy of the Appeal is attached to this Complaint as Exhibit C.

29.     With respect to the first group, identified by the FBI as Request No. 1372347-000, the Reporters Committee's Appeal argued that the FBI's issuance of a *Glomar* response was impermissible because the information requested has already been officially disclosed by the government, including in connection with Burleson's trial.

30.     With respect to second group, identified by the FBI as Request No. NFP-71761, the Reporters Committee's Appeal argued that the Request "reasonably described" the records sought pursuant to 5 U.S.C. § 552(a)(3)(A).

31.     With respect to the third group, identified by the FBI as Request No. 1372342-000, the Reporters Committee's Appeal argued that the FBI impermissibly asserted, without explanation, that the entirety of records responsive to the Request are exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A).  Further, the Reporters Committee's Appeal challenged the FBI's failure to produce segregable, non-exempt information responsive to the Request.

32.     With respect to the fourth group, identified by the FBI as Request No. 1372351-000, the Reporters Committee's Appeal states that that the FBI failed to make a determination with respect to the Request within the statutory time limits proscribed by FOIA.

33.     By letter dated July 5, 2017, DOJ's Office of Information Policy ("OIP") informed the Reporters Committee that it would not consider the administrative appeal of that portion of the Request identified by the FBI as Request No. 1372351-000, stating that "[a]s no

adverse determination has yet been made by the FBI [on Request No. 1372351-000], there is no further action for this Office to consider on appeal." A true and correct copy of the letter is attached to this Complaint as Exhibit D.

34.     As of the filing of this Complaint, no further information or communication from Defendants concerning the Request or the Reporters Committee's Appeal has been received by the Reporters Committee.

35.     As of the filing of this Complaint, Defendants have not released any records or portions thereof that are responsive to the Reporters Committee's Request.

36.     As of the filing of this Complaint, it has been 131 calendar days since the Reporters Committee's Request was submitted, and 77 calendar days since the Reporters Committee's Appeal was submitted.

## CAUSES OF ACTION

### Count I

**Violation of FOIA for Failure to Comply with Statutory Deadlines**

37.     Plaintiff repeats and re-alleges the foregoing paragraphs.

38.     Defendants are agencies subject to FOIA.

39.     Through the Request, Plaintiff properly asked for records within the possession, custody and/or control of Defendants.

40.     Defendants failed to make a determination with respect to Plaintiff's Request within the 20-working day deadline required by FOIA.  5 U.S.C. § 552(a)(6)(A).

41.     Defendants failed to make a determination with respect to Plaintiff's Appeal within the 20-working day deadline required by FOIA.  5 U.S.C. § 552(a)(6)(A).

42.     Plaintiff has and/or is deemed to have exhausted applicable administrative remedies with respect to the Request.  5 U.S.C. § 552(a)(6)(A); *id.* § 552(a)(6)(C).

## Count II

### Violation of FOIA for Wrongful Withholding of Agency Records

43.     Plaintiff repeats and re-alleges the foregoing paragraphs.

44.     Defendants are agencies subject to FOIA.

45.     Through the Request, Plaintiff properly asked for agency records within the possession, custody and/or control of Defendants.

46.     Defendants have not released any records or portions thereof that are responsive to Plaintiff's Request.

47.     Defendants have failed to identify whether or how disclosure of the records sought by Plaintiff's Request would foreseeably harm an interest protected by a FOIA exemption.  5 U.S.C. § 552(a)(8)(A).

48.     Defendants have improperly withheld agency records responsive to the Request in violation of FOIA.  5 U.S.C. § 552(a)(3)(A).

49.     Plaintiff has and/or is deemed to have exhausted applicable administrative remedies with respect to the Request.  5 U.S.C. § 552(a)(6)(A); *id.* § 552(a)(6)(C).

## Count III

### Violation of FOIA for Failure to Conduct a Reasonable Search

50.     Plaintiff repeats and re-alleges the foregoing paragraphs.

51.     Defendants are agencies subject to FOIA.

52.     Through the Request, Plaintiff properly asked for agency records within the possession, custody and/or control of Defendants.

53.     Defendants failed to conduct a proper or sufficient search for records responsive to the Request.

54.     Defendants' failure to conduct a proper or sufficient search in response to the Request violates their obligations under FOIA.  5 U.S.C. § 552(a)(3).

55.     Plaintiff has and/or is deemed to have exhausted applicable administrative remedies with respect to the Request.  5 U.S.C. § 552(a)(6)(A); *id.* § 552(a)(6)(C).

## Count IV

**Violation of FOIA for Failure to Segregate and Produce Non-Exempt Material**

56.     Plaintiff repeats and re-alleges the foregoing paragraphs.

57.     Defendants are agencies subject to FOIA.

58.     Through the Request, Plaintiff properly asked for agency records within the possession, custody and/or control of Defendants.

59.     Defendants failed to segregate and produce non-exempt material in response to the Request.

60.     Defendants' failure to segregate and produce non-exempt material in response to the Request violates their obligations under FOIA.  5 U.S.C. § 552(b); *id.* § 552(a)(8).

61.     Plaintiff has and/or is deemed to have exhausted applicable administrative remedies with respect to the Request.  5 U.S.C. § 552(a)(6)(A); *id.* § 552(a)(6)(C).

## Count V

**Violation of FOIA for Failure to Make a Determination with Respect to Administrative Appeals**

62.     Plaintiff repeats and re-alleges the foregoing paragraphs.

63.     Defendants are agencies subject to FOIA.

64.     Defendants failed to make a determination with respect to Plaintiff's Appeal within the 20-working day deadline required by FOIA

65.     Defendants' failure to make a timely determination with respect to the Appeal violates their obligations under FOIA.  5 U.S.C. § 552(a)(6)(A)(ii).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) order Defendants to conduct a reasonable search for all records responsive to Plaintiff's Request, and to immediately disclose all non-exempt records responsive to the Request in their entirety, as well as all non-exempt portions of responsive records;

(2) issue a declaration that Plaintiff is entitled to disclosure of the records responsive to the Request;

(3) enjoin Defendants from continuing to withhold any and all non-exempt records or portions thereof responsive to Plaintiff's Request;

(4) issue a declaration that Plaintiff is entitled to news media fee status;

(5) issue a declaration that the Reporters Committee is entitled to a fee waiver in connection with the Request;

(6) award Plaintiff reasonable attorney's fees and costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(7) grant such other relief as the Court may deem just and proper.

Dated:  August 21, 2017

Respectfully submitted,

 /s/ Katie Townsend
Katie Townsend
DC Bar No. 1026115

THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, D.C. 20005
Phone:  202.795.9300
Facsimile:  202.795.9310
E-mail: ktownsend@rcfp.org

*Counsel for Plaintiff*

*Of Counsel for The Reporters Committee
for Freedom of the Press:*

Jennifer A. Nelson
DC Bar No. 1011387
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, D.C. 20005
Phone:  202.795.9300
Phone:  202.795.9300
Facsimile:  202.795.9310
E-mail: jnelson@rcfp.org