UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REPORTERS COMMITTEE<br>FOR FREEDOM OF THE PRESS,<br>*Plaintiff*,<br>v.<br>FEDERAL BUREAU<br>OF INVESTIGATION, *et al.*,<br>*Defendants*. | Civil Action No. 17-1701-RC |

**DEFENDANTS' STATEMENT OF**
**MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 7(h), Defendants, the Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI"), submit this statement of material facts as to which there is no genuine issue in support of their motion for partial summary judgment on the Freedom of Information Act ("FOIA") claims by Plaintiff Reporters Committee for Freedom of the Press ("RCFP").

**I.    RCFP's FOIA Request to the FBI**

1.    By letter dated April 12, 2017, Plaintiff submitted a FOIA request to FBI Headquarters, Information Management Division, Winchester, Virginia. The request sought:

(1) All records that mention "Longbow" or "Longbow Productions" since January 1, 2010, including but not limited to email communications, case files, training materials, and contracts;

(2) All records, including but not limited to email communications, concerning or referencing the impersonation of a documentary filmmaker and/or a documentary film crew by the FBI in connection with any criminal investigation related to *United States v. Burleson*, No. 216-CR-00046 (PAL) (GMN) (D. Nev.);

(3) The October 2014 video recording of Mr. Burleson made by FBI agents posing as a documentary film crew;

1

 (4) All records, including but not limited to email communications, concerning or referencing the impersonation of a documentary filmmaker and/or a documentary film crew by the FBI in connection with any criminal investigation related to *United States v. Bundy*, No. 2:16-CR-00046 (PAL) (GMN) (D. Nev.);

 (5) The "release form" referenced on Page 2 of the Government's Motion to Strike in *United States v. Bundy*, No. 2:16-CR-00046 (PAL) (GMN), ECF. No. 926 (D. Nev. Nov. 2, 2016);

 (6) All records, including but not limited to, email communications, concerning or referencing any other instances of impersonation of a documentary filmmaker and/or a documentary film crew by the FBI in connection with any criminal investigation since January 1, 2010;

 (7) Records of any "professional credentials, websites and business cards" used by FBI agents in connection with the impersonation of a documentary filmmaker and/or a documentary film crew since January 1, 2010; and

 (8) All records of the FBI's policies and practices concerning the impersonation of documentary filmmaker and/or documentary film crew since January 1, 2010, including records of any changes to those policies and practices.

RCFP sought a news media fee status and a public interest fee waiver. Hardy Decl. ¶ 5 & Ex. A.

### A. Items 2, 3, and 5: FOIPA Request No. 1372347-000

2. By letter dated April 27, 2017, the FBI acknowledged receipt of items 2, 3 and 5 of RCFP's FOIA request and assigned it FOIPA Request Number 1372347-000. The FBI advised RCFP that it was the FBI's policy to neither confirm nor deny the existence of any records which could tend to indicate or reveal whether an individual or organization is of investigatory interest to the FBI. Hardy Decl. ¶ 12 & Ex. G.

3. By letter dated June 5, 2017, RCFP submitted an appeal to the Office of Information Policy ("OIP") challenging the FBI's response to FOIPA Request Number 1372347-000. Hardy Decl. ¶ 13 & Ex. D.

4. By letter dated June 8 2017, OIP acknowledged receipt of RCFP's appeal and assigned it appeal number DOJ-AP-2017-004543. Hardy Decl. ¶ 14 & Ex. H.

5. Before RCFP's appeal was adjudicated, RCFP filed this action on August 21, 2017. Hardy Decl. ¶ 15; Compl., ECF No. 1.

6. By letter dated September 8, 2017, OIP informed RCFP that, because it filed a lawsuit, OIP was closing its administrative appeal. Hardy Decl. ¶ 16 & Ex. I.

### B.   Items 6 and 7: NFP-71761

7. By letter dated April 27, 2017, the FBI acknowledged receipt of items 6 and 7 of RCFP's FOIA request and assigned it Request Number NFP-71761.[1] The FBI advised RCFP that FOIA provides for access to agency records where the records sought are "reasonably described;" however, RCFP's letter did not contain enough descriptive information to permit a search of the FBI's records. The FBI afforded RCFP the opportunity to provide more specific information. The letter also informed RCFP of its right to appeal the FBI's decision to OIP within ninety days from the date of its letter. Alternatively, RCFP could seek dispute resolution services by contacting the Office of Government Information Services ("OGIS") or the FBI's FOIA Public Liaison. Hardy Decl. ¶ 17 & Ex. J.

8. By letter dated June 5, 2017, RCFP submitted an appeal to OIP challenging the FBI's response to Request Number NFP-71761. Hardy Decl. ¶ 18 & Ex. D.

9. By letter dated June 8 2017, OIP acknowledged receipt of RCFP's appeal and assigned it appeal number DOJ-AP-2017-004546. Hardy Decl. ¶ 19 & Ex. K.

10. Before RCFP's appeal was adjudicated, RCFP filed this action on August 21, 2017. Hardy Decl. ¶ 20; Compl., ECF No. 1.

---

[1] NFP stands for "Non-FOIPA." The FBI assigns these numbers when it deems a request as not a proper FOIA or Privacy Act request. The FBI may determine a request as improper for a variety of reasons to include, but not limited to, the request being too vague, too broad, or not reasonably described to trigger a search of the FBI's Central Records System ("CRS.")

## II.     The FBI's Exemption 7(E) *Glomar* Responses to Items 6 and 7

11.     The FBI has modified its NFP determination concerning items 6 and 7 of RCFP's request. The FBI's original determination was based on the overly broad nature of those items of RCFP's request. In order to locate records responsive to those items, the FBI originally determined that it would have to conduct an expansive search of every investigative file within the CRS to determine if an undercover operation impersonating a documentary filmmaker and/or a documentary film crew was conducted. The CRS is not organized in such a way as to locate specific investigative techniques employed within its investigative files. After this litigation commenced, the FBI determined that only records concerning the use of this technique within the investigative files already identified in response to RCFP's request would be processed. Hardy Decl. ¶¶ 45–46.

12.     Thus, the FBI withdraws its original NFP determination and instead asserted Exemption 7(A) to withhold records responsive to item 6 as they pertain to the use of "a documentary filmmaker and/or a documentary film crew" in the investigative files related to *United States v. Burleson* and *United States v. Bundy*, No. 16-46 (D. Nev.). With respect to the use of this investigative technique as it pertains to "any criminal investigation since January 1, 2010," the FBI asserts Exemption 7(E) and can neither confirm nor deny that the use of a documentary filmmaker and/or a documentary film crew was employed in any investigative files outside of the *Bundy* and *Burleson* investigative records previously discussed. Hardy Decl. ¶ 45.

13.     Further, the FBI withdraws its original NFP determination and instead asserts Exemption 7(A) to withhold records responsive to item 7 as they pertain to the use of any "professional credentials, websites and business cards" by FBI agents "impersonating a documentary filmmaker and/or a documentary film crew" in the investigative files related to

*United States v. Burleson* and *United States v. Bundy*, No. 16-46 (D. Nev.). With respect to the use of this investigative technique as it pertains to "any criminal investigation" outside of the *Burleson* and *Bundy* investigative records since January 1, 2010, the FBI can neither confirm nor deny that they used "professional credentials, websites, and business cards" in connection with the "impersonation of a documentary filmmaker and/or a documentary film crew." Hardy Decl. ¶ 46.

14.     The FBI has also modified its initial responses to items 2, 3, and 5 of RCFP's request. Due to public disclosures made during the criminal litigation in *United States v. Burleson* and *United States v. Bundy*, No. 16-46 (D. Nev.), the FBI no longer asserts an Exemption 7(E) *Glomar* response with respect to those items. Hardy Decl. ¶¶ 39–44.

### III.    Basis for the FBI's Exemption 7(E) *Glomar* Responses

15.     Pursuant to 28 U.S.C. §§ 533 and 534, Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations ("AGG-DOM"), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government, with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency; to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security; and to further the foreign intelligence objectives of the United States. Hardy Decl. ¶ 32.

16.     RCFP's FOIA request implicates an FBI law enforcement technique for conducting undercover investigations. Records pertaining to undercover investigative operations in criminal and national security investigations where this technique was used were compiled for law enforcement purposes. The ultimate purpose of these investigations would be to investigative or thwart criminal behavior. Accordingly, records responsive to items 6 and 7 of RCFP's request would have been created for a law enforcement purpose. Hardy Decl. ¶ 33.

17. Undercover operations are an effective and critical investigative technique used by the FBI in both criminal and national security investigations. While the FBI's use of FBI agents in an undercover capacity is well-known, the specific details regarding those operations (such as how, where, and under what conditions they are utilized and deployed), is not generally known. Hardy Decl. ¶ 36.

18. Although the FBI has acknowledged using FBI agents impersonating a documentary film crew in an undercover operation known as "Longbow," utilized during the standoff at the Malheur National Wildlife Refuge, the FBI has not acknowledged use of such a technique in any other FBI investigation. Hardy Decl. ¶¶ 30, 36.

19. Confirming or denying records pertaining to FBI agents impersonating documentary filmmakers and/or documentary film crews outside of what has previously been acknowledged would allow criminals to discern if and when the FBI has used this law enforcement technique. Such a disclosure could reasonably be expected to risk circumvention of the law. Hardy Decl. ¶ 36.

20. Acknowledging or denying the use of this technique in other FBI investigations would present a two-fold harm. First, it would allow criminals to determine if the FBI employed this technique in other instances within the timeframe of RCFP's request. This would allow criminals to reasonably discern whether or not the FBI has employed this technique to investigate their criminal activities. This would allow criminals to predict FBI investigative efforts targeting their activities, allowing them to pre-emptively destroy/tamper with valuable evidence, intimidate/eliminate potential witnesses, and or create false alibis to thwart FBI efforts to enforce the law. Also, it may embolden some criminals to continue ongoing criminal activities should they be able to definitely discover the FBI has not used this technique against them. Hardy Decl. ¶ 37.

21.     Second, acknowledging or denying this technique would provide criminals key information about the frequency of the technique's use. Criminals and terrorists could employ this information to alter their patterns of behavior, areas of operation, contacts, and other behaviors in effort to circumvent FBI undercover operations. Furthermore, it would allow criminals to judge whether they should completely avoid any contacts with documentary film crews, rendering the investigative technique ineffective. Hardy Decl. ¶ 37.

22.     The FBI must maintain a *Glomar* response in all similar cases whether or not responsive records exist in order for the *Glomar* to be credible and effective. If the FBI were to invoke a *Glomar* only when it actually possessed responsive records, then the invocation would be interpreted as an admission that responsive records exist in such response would cease to be effective. Hardy Decl. ¶ 29.

23.     Merely acknowledging the existence or non-existence of records would disclose law enforcement techniques or procedures used by the FBI and disclosure could reasonably be expected to risk circumvention of the law.  Hardy Decl. ¶ 30.

Dated: July 23, 2018

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:   /s/ Johnny Walker
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Counsel for Defendants*