UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REPORTERS COMMITTEE
FOR FREEDOM OF THE PRESS,

*Plaintiff*,

v.

FEDERAL BUREAU
OF INVESTIGATION, *et al.*,

*Defendants*.

Civil Action No. 17-1701 (RC)

## JOINT STATUS REPORT

Plaintiff, the Reporters Committee for Freedom of the Press ("RCFP"), and Defendants, the Federal Bureau of Investigation ("FBI") and the United States Department of Justice, submit this joint status report in response to the Court's minute order dated November 26, 2019.

1.      On August 21, 2017, Plaintiff filed a complaint alleging that Defendants violated the Freedom of Information Act ("FOIA") by not releasing requested records about the FBI's impersonation of documentary filmmakers and film crews. ECF 1, ¶ 2.  Specifically, RCFP's FOIA request sought the following categories of records:

1. All records that mention 'Longbow' or 'Longbow Productions' since January 1, 2010, including but not limited to email communications, case files, training materials, and contracts;

2. All records, including but not limited to email communications, concerning or referencing the impersonation of a documentary filmmaker and/or a documentary film crew by the FBI in connection with any criminal investigation related to *United States v. Burleson*, No. 2:16-CR-00046 (PAL) (GMN) (D. Nev.);

3. The October 2014 video recording of Mr. Burleson made by FBI agents posing as a documentary film crew;

4. All records, including but not limited to email communications, concerning or referencing the impersonation of a documentary filmmaker and/or a documentary film crew by the FBI in connection with any criminal investigation related to *United States v. Bundy*, No. 2:16-CR-00046 (PAL) (GMN) (D. Nev.);

5. The 'release form' referenced on Page 2 of the Government's Motion to Strike in *United States v. Bundy*, No. 2:16-CR-00046 (PAL) (GMN), ECF. No. 926 (D. Nev. Nov. 2, 2016);

6. All records, including but not limited to email communications, concerning or referencing any other instances of impersonation of a documentary filmmaker and/or a documentary film crew by the FBI in connection with any criminal investigation since January 1, 2010;

7. Records of any 'professional credentials, websites and business cards' used by the FBI agents in connection with the impersonation of a documentary filmmaker and/or a documentary film crew since January 1, 2010; and

8. All records of the FBI's policies and practices concerning the impersonation of documentary filmmakers and/or documentary film crews since January 1, 2010, including records of any changes to those policies and practices.

Compl., ECF 1, ¶ 19.

2.    The FBI issued a *Glomar* response with respect to Items 6 and 7, contending that acknowledging the existence *vel non* of responsive records would reveal information protected from disclosure by Exemption 7(E).  The parties proposed to file partial summary judgment motions solely on the propriety of the FBI's *Glomar* response, and the Court adopted that proposal. On March 1, 2019, the Court denied Defendants' motion for partial summary judgment and granted Plaintiff's cross-motion for partial summary judgment as to the propriety of Defendants' *Glomar* response.  *See* ECF 29.

3.    Thereafter, the parties filed joint status reports dated March 18, 2019; April 17, 2019; May 17, 2019; June 17, 2019; July 17, 2019; October 17, 2019; and November 26, 2019 updating the Court on the FBI's search for records responsive to Items 6 and 7 of Plaintiff's FOIA request.  In the November 26, 2019 status report, Defendants reported that the FBI had completed its search and "reviewed approximately 125,000 pages of potentially responsive records for responsiveness," and would "begin processing records to determine whether they will be released or withheld as exempt."  ECF 36 at ¶ 4.

4.     On January 14, 2020, the FBI provided Plaintiff with its first production of records and/or portions thereof responsive to Items 6 and 7 of Plaintiff's FOIA request.  Of the 90 pages reviewed by the FBI in connection with that release, 36 pages were deemed by the FBI to be "responsive."  Of those 36 pages deemed "responsive" by the FBI, 10 were redacted/withheld in part citing 5 U.S.C. § 552(b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E), and 26 were withheld in their entirety citing 5 U.S.C. § 552(b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and b(7)(E).

5.     **Plaintiff's Position:**  During meet-and-confer discussions prior to the filing of the parties' November 26, 2019 status report, counsel for Plaintiff asked Defendants to provide the number of pages of records the FBI had identified as responsive to Items 6 and 7 of Plaintiff's FOIA request.  This request was made so that Plaintiff could evaluate Defendants' proposal to complete its processing and production of responsive records on or before May 29, 2020.  ECF 36 at ¶ 5.

6.     Counsel for Defendants refused to provide the number of pages of records it has identified as responsive to Items 6 and 7 of Plaintiff's FOIA request because, according to the FBI, doing so would purportedly reveal the "frequency with which the FBI employs the technique" of impersonating documentary filmmakers, which the FBI asserts is information that may be withheld under Exemption 7(E).

7.     Plaintiff strongly disagrees with the FBI's position, which, among other things, contravenes this Court's March 1, 2019 Order denying Defendants' motion for partial summary judgment and granting Plaintiff's partial motion for summary judgment.  ECF 29.  The Court rejected the FBI's attempt to assert a *Glomar* response to the relevant portions of RCFP's FOIA request under Exemption 7(E).  *Id.*  Specifically, the Court held that the fact that the FBI impersonates documentary filmmakers is a "technique" that is known to the public and that

"revealing that the FBI has responsive records would establish that it has used the technique" more than once, but that "this would not reduce or nullify the effectiveness of the technique when it is actually used." *Id.* at 19.

8.      Even assuming, *arguendo*, that the frequency with which the FBI "employs the technique" at issue is information that may be withheld under Exemption 7(E), the number of pages of records identified by the FBI as responsive to Items 6 and 7 of RCFP's FOIA request does not provide that information.  Indeed, Defendants have previously represented to the Court in this litigation that the FBI possesses 20,000 pages of responsive records related to a *single* instance of documentary filmmaker impersonation.  ECF 16 at 4 (stating that following a search of the Bundy/Burleson investigative files for the search terms "Longbow" and "Longbow Productions," the FBI located more than 20,000 pages of responsive records).  The FBI's position is an attempted end-run around this Court's determination that the FBI may not assert a *Glomar* response to refuse to confirm or deny the existence of records responsive to Items 6 and 7 of RCFP's FOIA request.

9.      Without knowing the number of pages of responsive records at issue Plaintiff cannot determine whether Defendants' proposed processing schedule is reasonable.  Moreover, Plaintiff anticipates that Defendants' position will place it a significant disadvantage for purposes of summary judgment briefing.  It is unclear to Plaintiff, for example, how Defendants intend to provide a document-by-document *Vaughn* Index sufficient to carry their burden to justify the withholding of any records, or portions thereof, if they refuse to identify the number of responsive documents they are withholding.  *See King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987) (an agency's showing must be "full and specific enough to afford the FOIA requester a meaningful opportunity to contest . . . the soundness of the withholding," and explaining that such

a showing is necessary to correct the "asymmetrical distribution of knowledge that characterizes FOIA litigation").

10.     **Defendants' Position:**  The FBI has completed its search with respect to Items 6 and 7 and has reviewed approximately 125,000 pages of potentially responsive records for responsiveness. The FBI has begun processing the records from this pool that were found to be responsive to determine whether they will be released or withheld as exempt.

11.     The FBI reviewed the initial subset of 90 pages and released the non-exempt material to Plaintiff on January 14, 2020. The remainder of the material, which is equal to or greater than one document, will be reviewed and processed in accordance with briefing requirements over the next six months. The FBI anticipates completing the processing of this material on or before May 29, 2020. The government anticipates being able to file a summary judgment motion on or before July 31, 2020.

12.     Defendant disagrees with Plaintiff's position that the Court's prior order requires it to reveal sensitive information about the volume of responsive records regarding an undercover law enforcement technique. Indeed, the order indicates precisely the opposite. Contrary to RCFP's reading, the Court's order assumed that the number of responsive records would *not* be revealed, and it was precisely on that basis that the Court rejected the FBI's *Glomar* response. Specifically, the Court concluded that "[s]imply revealing that the FBI has any such records would not allow criminals to discern whether or not the FBI has used the technique to investigate their own, specific activity, because all a criminal would know is the existence of an *unquantified* number of records. For the same reason, acknowledging the existence of records, *without any indication about the number or type of records found*, would not provide any information about the frequency of the technique's use." ECF 29 at 18 (emphases added). RCFP misleadingly interprets the Court's order

as requiring the FBI to disclose the very information that the Court assumed would not be disclosed, even though that assumed nondisclosure was the very basis for the Court's conclusion that the FBI's law enforcement concerns did not necessitate a *Glomar* response. With its motion for summary judgment, the FBI intends to provide the Court *in camera* with all the information necessary to sustain its withholdings of exempt material.

13.     The parties propose to file another joint status report updating the Court on the status of the FBI's processing of RCFP's request on or before March 17, 2020.

Respectfully submitted,

THE REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS

/s/ *Katie Townsend*
KATIE TOWNSEND, D.C. Bar # 1026115
JENNIFER A. NELSON, D.C. Bar #1011387
1156 15th Street, NW, Suite 1020
Washington, District of Columbia 20005
Telephone: 202 795 9300
ktownsend@rcfp.org
jnelson@rcfp.org

*Counsel for Plaintiff*

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:   /s/ *Sian Jones*
SIAN JONES, D.C. Bar No 1024062
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2578
Sian.jones@usdoj.gov

*Counsel for Defendants*

Dated: January 31, 2020